IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REGINALD LEROY BYRD

      Petitioner,               No. 2:10-cv-2741 KJM JFM (HC)

  vs.

RAUL LOPEZ,

      Respondent.            FINDINGS AND RECOMMENDATIONS

_____/

      Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 conviction for assault with a deadly weapon in the Sacramento County Superior Court, case number 07F04200, on grounds of sufficiency of the evidence and ineffective assistance of counsel.

## BACKGROUND

      The California Court of Appeal, Third Appellate District, summarized the facts underlying the challenged conviction in this case. Petitioner is the defendant referred to herein:

> On April 27, 2007, [Trung Chi] Tran and [Biec Thi] Duong were on their newspaper route in an apartment complex. Tran let Duong out of their Toyota Corona so she could deliver papers there. He then pulled the car into a space in the parking lot and got out to deliver papers himself. Tran left the keys in the ignition and the engine running.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

After making his delivery, Tran saw defendant sitting in the driver's seat of the Corona with the door closed. Fearing that his car would be taken, Tran jumped onto the hood, grabbed the windshield wipers with both hands, and yelled at defendant in Vietnamese to get out of the car. Defendant responded by backing the car up a short distance, then turning and driving forward with Tran still on the hood clutching the windshield wipers. Defendant drove approximately 20 miles per hour and began zigzagging back and forth, causing Tran's body to move from side to side. Tran felt that he could not hold onto the wipers anymore and, fearing injury, he let go and rolled off the hood. He hit the ground, injuring his face and scratching his wrist and leg, causing some light bleeding. His whole body was sore for approximately a week following the incident.

Two days later, police officers saw defendant and another person in the stolen Corona. They detained him when he got out of the car. The keys to the car were in his front pocket. Tran identified defendant with "100 percent" certainty.

Defendant initially admitted being at the crime scene, but told officers that "a white guy took the car and he drove it." When an officer questioned the truthfulness of the statement, defendant admitted that he took the car and heard Tran say, "Hey, hey, hey." But defendant insisted Tran never jumped on the hood. At that point, no one had said anything to defendant about the victim being on the hood of the car.

At trial, Duong testified she saw her husband lying across the hood of the car, hanging onto the windshield wipers. At first, the car was not moving. However, it backed up and moved forward with Tran still on the hood yelling "get out." The car zigzagged back and forth until Tran rolled off the hood and fell onto the ground. As the car drove off, Duong rushed over to her husband, who had suffered minor injuries to his leg and his face.

Defendant testified that he was a cocaine addict. Remembering little else about the details of the incident, he said that, after smoking "four or five times the normal dosage" of cocaine, he saw the Toyota Corona and got in, knowing it was not his car. It was not until after he got into the car, backed up, shifted into drive, and began to drive forward that he saw Tran on the hood of the car. Defendant claimed to have been in a "state of shock" and "high on drugs" and said he did not stop the car because he was "scared." He tried to get away, driving with Tran on the hood of the car. Because he was "so high that morning," he did not remember much of what happened and did not recall having any conscious thought of trying to get Tran off the hood of the car. He did not recall zigzagging as he drove, and first realized that Tran was no longer on the hood only when defendant finally stopped at a stop sign down the road. Stating he was concerned that Tran may have

2

>been injured falling off the car, defendant admitted that he did not stop to check on Tran. Defendant kept the car until officers arrested him two days later.
>
>Defense expert Beth Hirsch, a drug and alcohol counselor, testified regarding the effects of long-term cocaine use. She opined that long-term drug users have "very diminished" cognitive abilities, and the thought process of a person who uses cocaine on a daily basis is "distorted," causing the person to react without thinking. Based on her interview of defendant, Hirsch opined that he was addicted to cocaine.

*People v. Byrd*, No. C059585, (Cal. Ct. App. 3rd Dist. July 22, 2009); Lodged Document ("LD") 4 at 2-4.

A jury convicted petitioner of assault with a deadly weapon (the challenged conviction) as well as unlawful taking of a motor vehicle. It was further found for sentence enhancement purposes that he had prior convictions within the meaning of California's habitual criminals or "three strikes" law (*see* Cal. Penal Code §§ 667(b)-(I), 11.70.12), and prior convictions for which he had served periods of incarceration (*see* Cal. Penal Code §§ 667(a), 667.5(b)). The court imposed an aggregate prison term of nineteen years. Clerk's Transcript ("CT") at 310.

On direct review, the California Court of Appeal, Third Appellate District, affirmed the convictions and sentence in an unpublished opinion. LD 4. The California Supreme Court denied a petition for review. LD 6, 7. Petitioner sought habeas corpus relief in state court where relief was likewise denied at all levels. LD 8-13.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

3

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Under AEDPA, a state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ybarra v. McDaniel*, 656 F.3d 984, 989 (9th Cir. 2011). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

II.  Petitioner's Claims

    A.  Sufficiency of the Evidence

    Petitioner claims there was insufficient evidence to sustain his conviction for assault with a deadly weapon.  In particular, he argues he did not use the vehicle as a weapon to assault the victim, but rather, that the victim "threw himself at the vehicle and injured himself[.]" Dckt. 1 at 4.

    The Due Process Clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970).  On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

    A court reviews the entire record when the sufficiency of the evidence is challenged on habeas corpus. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  The inquiry of focus is not whether the evidence excludes every hypothesis except guilt, but rather, whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).

    The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639

1  (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the
2  record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein*
3  *v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Under the
4  AEDPA, this standard is applied with an additional layer of deference. *Juan H. v. Allen*, 408
5  F.3d 1262, 1274-75 (9th Cir. 2005).  This court must ask "whether the decision of the California
6  Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of
7  this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

At the time petitioner committed the offense of conviction, the state penal code provided "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment[.]"  Cal. Pen. Code § 245(a)(1) (2007).  To prove this crime, the prosecution had to prove four elements:

> 1.  The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person;
>
> 2.  The defendant did that act willfully;
>
> 3.  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;
>
> AND
>
> 4.  When the defendant acted, he had the present ability to apply force with a deadly weapon.

CT at 143.  In this context, "[a] *deadly* weapon is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." *Id*.

Presented with petitioner's claim of insufficient evidence, the state appellate court held in the last reasoned decision applicable to this claim:

/////

> [T]here is sufficient evidence to support findings that defendant (1) knew Tran was on the hood of the car and (2) made conscious efforts to shake Tran off in a manner likely to produce injury. Both Tran and Duong testified that Tran jumped on the hood of the car *before* defendant put it in motion. Both testified that Tran was yelling at defendant in Vietnamese to get out of the car. Although Tran was holding onto the windshield wipers, face-to-face with defendant, who was in the driver's seat, defendant backed the car up, then turned and drove forward at approximately 20 miles per hour, swerving from side to side in zigzag fashion, admittedly doing so in an attempt to "get away."
>
> Defendant argues he did not use the car as an instrument of violence; rather, he zigzagged the car "to encourage Tran to get off the hood." Citing *People v. Jones* (1981) 123 Cal.App.3d 83 (hereafter *Jones*) and *People v. Cotton* (1980) 113 Cal.App.3d 294 (hereafter *Cotton*), defendant argues that Tran's injuries were merely the unintended consequence of defendant's reckless driving.
>
> *Jones* and *Cotton* are not helpful to defendant. In those cases, the defendants were being pursued by police and, during the chases, struck vehicles and injured victims. (*Jones*, *supra*, 123 Cal.App.3d at p. 87; *Cotton*, *supra*, 113 Cal.App.3d at pp. 296-298.) [....]
>
> Neither case is representative of the circumstances here, where defendant, in attempting to steal the car, made deliberate zigzagging maneuvers at approximately 20 miles per hour for the sole purpose of ejecting Tran from the hood of the car, fully aware that the injury to him "would directly, naturally, and probably result from his conduct." (*People v. Williams*, *supra*, 26 Cal.4th at p. 788.)
>
> [....]
>
> In an odd twist of logic, defendant argues that it was not he, but rather Tran, who willfully applied force and, therefore, defendant did not commit an assaultive act. We reject the suggestion. A victim's attempt to thwart a vehicle theft does not vitiate the criminal's subsequent assaultive acts against the victim in response.
>
> Defendant urges us to conclude that the car was not a deadly weapon because it was moving slowly, and his maneuvers were not likely to result in great bodily injury because Tran "let go and rolled off the hood *before* a deadly or truly dangerous situation could arise." Noting that Tran suffered minimal injuries, did not seek medical treatment, and finished delivering newspapers, defendant argues he did not create a situation in which great bodily injury was likely. We disagree.

7

> The car was moving about 20 miles per hour, a significant speed to one who is on the hood clutching the windshield wipers. That Tran elected to minimize injury to himself by letting go was fortuitous; but it does not minimize the potential for serious injury created by defendant. And the fact that Tran suffered minimal injuries is not dispositive of the seriousness of the injuries that he could have suffered.
>
> Substantial evidence supports defendant's conviction for [assault with a deadly weapon].

LD 4 at 6-9.

Importantly, the prosecution was not required to prove intent to harm, or actual harm, but rather, that petitioner did an act with a deadly weapon that, by its nature, would probably and directly result in the application of physical force to another person. LD 4 at 6 (citing *People v. Williams*, 26 Cal.4th 779, 790 (2001)). As the state court found, there was evidence that Tran jumped onto the hood of his car before petitioner began to move the car and petitioner conceded in his own testimony that he became aware of Tran's presence on the hood as he drove, yet petitioner did not stop. Reporter's Transcript ("RT") at 90, 150-52, 199-200, 271, 276. From this evidence the jury could reasonably infer that when petitioner drove the car he was aware of facts sufficient to establish that the act of driving would probably and directly result in the application of physical force to Tran, who clung to the hood.

Petitioner argues, as he did in state court, that he did not act "with force likely to produce great bodily injury," as the phrase is used in the definition of a deadly weapon. Dckt 29 at 15. Although he disputes the trial evidence that he drove at about 20 miles per hour with Tran on the hood, this court views the evidence in the light most favorable to the prosecution and therefore accepts the testimony of Tran and Duong on that point as true. *See Jackson*, 443 U.S. at 319. On this evidence, the state court reasonably concluded that petitioner acted with force likely to produce great bodily injury. Moreover, as petitioner acknowledges, section 245 of the Penal Code at the time he committed his offense encompassed alternative requirements of the use of a "deadly weapon... *or* force likely to produce great bodily injury" as the mechanism of

assault. *See* Cal. Pen. Code § 245(a)(1) (2007) (emphasis added). As set forth, a "deadly weapon" was defined for the jury as "any object, instrument, or weapon that is inherently deadly or dangerous *or* one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." CT at 143 (emphasis added). Thus, as an alternative to finding that petitioner used force likely to cause great bodily injury, the jury could have reasonably found that the car was inherently deadly or dangerous when it was driven with Tran clinging to the hood. *See generally*, *People v. Golde*, 163 Cal.App.4th 101, 117 (2008) (rejecting the defendant's assertion that a car is not inherently deadly where defendant drove the car toward a person).

As to the remaining elements of the offense, there appears no dispute that petitioner willfully drove the car and that when he did so he had the present ability to apply force to Tran's body which lay on the hood. Accordingly, the state court's holding that the record evidence supported a finding of guilt beyond a reasonable doubt was consistent with, and a reasonable application of the standards of *Jackson* and *Winship* to the facts of this case.

B.      Ineffective Assistance

Petitioner claims trial counsel rendered ineffective assistance by deciding at the last minute to offer evidence of voluntary intoxication even though voluntary intoxication is not a defense to assault with a deadly weapon. In this regard, petitioner contends trial counsel convinced him at the last minute to testify about his habitual use of crack cocaine, without sufficiently preparing him, causing prejudice to his defense and also opening the door to impeachment evidence of his prior offenses. Dckt. 1 at 4. He further argues that counsel failed to present the better defense that petitioner did not intend to swerve the car, but rather, drove the car in zigzags only because Tran obstructed his view of the road. Dckt. 1 at 31.

Habeas corpus petitions asserting ineffective assistance of counsel are governed by the clearly established federal law of *Strickland v. Washington,* 466 U.S. 668, 686, (1984). *See Baylor v. Estelle,* 94 F.3d 1321, 1323 (9th Cir. 1996). Ineffective assistance of counsel

exists where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. In order to make a state a cognizable claim under *Strickland,* petitioner must show, first, that counsel performed deficiently, and second, that prejudice resulted from counsel's deficient performance. *Id.* at 688.

"Surmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 688). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. *Id*. (citing *Strickland*, 466 U.S. at 689). "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (citing *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding; counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*. (citing *Strickland*, 466 U.S. at 687).

The state superior court rejected petitioner's claim that counsel performed deficiently in the challenged manner, holding in the last reasoned decision applicable to this claim that prejudice was not shown:

> In this case, it can not be said that if Petitioner had not testified in support of the voluntary intoxication defense, and the jury had not learned of Petitioner's prior felonies and drug use, that there is a reasonable probability that the jury would have had a reasonable doubt respecting Petitioner's guilt on the assault with a deadly weapon (ADW) charge.
>
> To begin, even had the jury accepted Petitioner's proposed alternative "obscured vision" defense, it would not have lawfully

precluded from finding guilt on the ADW count, since the fact that Petitioner willingly veered the car because his sight was blocked by Mr. Tran would not have negated any element of the crime.

[....]

The following evidence was established at trial without Petitioner's testimony. Both witnesses testified that Tran jumped on the hood of the car before Petitioner put it in motion. Both testified that Tran was yelling at Petitioner to get out of the car. Although Tran was holding onto the windshield wipers, face-to-face with Petitioner, who was in the driver's seat, Petitioner nevertheless backed the car up, then turned and drove forward at approximately 20 miles per hour, swerving from side to side as a result. In fact, Petitioner's alternate defense concedes that he willfully drove the car at a speed of 20 miles per hour knowing that Tran was clinging to the hood, and he willfully veered from side to side with no intention of stopping to permit Tran to get off safely. The motive behind Petitioner's willful act of swerving the car is not essential to the crime or conviction. As explained above, the law does not require the specific intent to injure the victim. All the law requires is a willful act resulting in the injury. Whether Petitioner veered the car to dislodge Tran or to better see his escape route despite Tran's presence on the hood of the car Petitioner had just stolen is of no import. By swerving the car back and forth at 20 miles per hour while Tran was atop it, Petitioner willfully committed an act that, by its nature would probably and directly result in injury to Tran, and, in fact, injury to Tran is precisely what occurred.

The evidence that Petitioner was a car thief was overwhelming and essentially undisputed by Petitioner. And, Petitioner's credibility was already threatened by evidence of his prior statements to the police. As discussed above, Petitioner initially admitted being at the crime scene, but told officers that "a white guy took the car and he drove it." Petitioner then admitted that he took the car and heard Tran say, "Hey, hey, hey." But then Petitioner insisted Tran never jumped on the hood – even though Petitioner had no way of knowing Tran's location on the hood if Petitioner's earlier statements were to believed.

Finally, as discussed above, the jury was properly instructed to apply the evidence of Petitioner's prior felony convictions only to determine Petitioner's credibility as a witness. A jury is presumed to follow its instructions.

As petitioner is unable to show any prejudice as a result of the error allegedly committed by his trial counsel, he has failed to make a *prima facie* case of ineffective assistance of counsel.

11

LD 9 at 8-9.

As the state court held, the defense petitioner asserts counsel should have presented would not have been successful, because it did not negate any of the elements of assault with a deadly weapon. Although petitioner's testimony opened the door to admission of his prior felony convictions, the jury is presumed to have followed the court's instructions to consider his prior offenses only on the issue of witness credibility. *See Rhoades v. Henry*, 598 F.3d 495, 510 (9th Cir. 2010); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). In addition, had petitioner not testified, the prosecution's evidence would have been undisputed except for the testimony of the defense expert, who opined that petitioner could not possibly have accelerated the car to 20 miles per hour and zigzagged back and forth in the short distance he drove the car. RT at 323-26. For the reasons discussed in rejecting petitioner's insufficient evidence claim, however, even if the jury did not believe the car reached 20 miles per hour and zigzagged back and forth, the testimony of Tran and Duong still sufficiently established the elements of assault with a deadly weapon. Accordingly, there is no likelihood of a different result absent petitioner's testimony.

In sum, petitioner fails to demonstrate a reasonable likelihood of a more favorable result had counsel not made the alleged errors and omissions. Accordingly, a reasonable argument exists that counsel's alleged errors did not cause petitioner to suffer actual prejudice. *See Richter*, 131 S.Ct. at 792 (holding that the state court reasonably could have concluded the petitioner did not establish prejudice based on his trial attorney's failure to counter blood pattern evidence because the evidence proposed by petitioner would not have undermined the prosecution's evidence). No relief is available.

      C.     Ineffective Assistance and Instruction with CALCRIM No. 361

The third ground in the petition asserted that trial counsel also rendered ineffective assistance by failing to object to the trial court's use of CALCRIM No. 361, which

instructs jurors they may draw inferences unfavorable to the defendant from any failure in his testimony to explain or deny evidence presented in the prosecution's case of which he has knowledge. Dckt. 1 at 5; CT at 139.

Respondent contends this claim is unexhausted. Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). *Casey v. Moore*, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Although petitioner raised this claim on appeal to the California Court of Appeal, Third Appellate District (LD 3), he failed to present it in either of his filings to the California Supreme Court (LD 5, 12). Petitioner indicates in response to the asserted procedural bar that he "elects to drop his third unexhausted claim." Dckt. 29 at 24. Accordingly, petitioner's third ground for relief is deemed abandoned and stricken from the petition.

## CONCLUSION

For all the foregoing reasons, petitioner's application for writ of habeas corpus should be denied. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY RECOMMENDED that

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 30, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

LS/byrd2741.hc